**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |
|---|---|
| **CELIENA MCCLELLAND**<br><br>          Plaintiff,<br><br>   v.<br><br>**DECHERT, LLP and**<br>**ELAINE WRY (Individually)**<br><br>          Defendants. | CIVIL ACTION<br>No. 2:21-cv-2702 |

## <u>ORDER</u>

**AND NOW**, this ____ day of _____, 2022, upon consideration of the Motion for Summary Judgment of Defendants Dechert, LLP and Elaine Wry, and any opposition thereto, it is hereby **ORDERED** that the Motion is **GRANTED** and judgment is entered in favor of Defendants and against Plaintiff Celiena McClelland, and Plaintiff's claims are hereby **DISMISSED WITH PREJUDICE.**

BY THE COURT:

_____
CHAD F. KENNEY, U.S.D.J.

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **CELIENA MCCLELLAND**<br><br>                    Plaintiff,<br><br>        v.<br><br>**DECHERT, LLP and**<br>**ELAINE WRY (Individually)**<br><br>                    Defendants. | CIVIL ACTION<br>No. 2:21-cv-2702 |

**MOTION FOR SUMMARY JUDGMENT OF DEFENDANTS**
**DECHERT, LLP AND ELAINE WRY**

Pursuant to Federal Rule of Civil Procedure 56, Defendants Dechert, LLP and Elaine Wry

hereby move for entry of summary judgment in connection with all claims asserted against them

by Celiena McClelland in the Complaint.   Defendants hereby incorporate by reference the

accompanying Statement of Facts and Memorandum of Law, and all exhibits thereto, as if set forth

in full herein.

                                                            Respectfully submitted,

                                                            */s/ Carolyn P. Short*
                                                            Carolyn P. Short
                                                            Valerie Brown
                                                            **Holland & Knight LLP**
                                                            Cira Centre
                                                            2929 Arch Street, Suite 800
                                                            Philadelphia, PA 19104
                                                            Telephone: 215-252-9600
                                                            Fax: 215-867-6070
                                                            Carolyn.Short@hklaw.com
                                                            Valerie.Brown@hklaw.com

Dated: April 22, 2022                                       *Attorneys for Defendants*

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **CELIENA MCCLELLAND**<br><br>        Plaintiff,<br><br>   v.<br><br>**DECHERT, LLP and**<br>**ELAINE WRY (Individually)**<br><br>        Defendants. | CIVIL ACTION<br>No. 2:21-cv-2702 |

---

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

---

**HOLLAND & KNIGHT LLP**
Carolyn P. Short
Valerie Brown
Cira Centre
2929 Arch Street, Suite 800
Philadelphia, PA 19104
Telephone: 215-252-9600
Fax: 215-867-6070
Carolyn.Short@hklaw.com
Valerie.Brown@hklaw.com

Dated: April 22, 2022                    *Attorneys for Defendants*

## <u>TABLE OF CONTENTS</u>

**Page**

I.     INTRODUCTION ..................................................................................................1

II.    STATEMENT OF FACTS ....................................................................................2

III.   LEGAL ARGUMENT...........................................................................................4

     A.    The Summary Judgment Standard ...........................................................4

     B.    Plaintiff Cannot Establish a *Prima Facie* Case of Racial Discrimination
          Because She Did Not Suffer Any Adverse Employment Action .............5

          1.    Plaintiff Was Not Constructively Discharged....................................7

     C.    There Is No Evidence To Support Plaintiff's Claim for Hostile Work
          Environment..............................................................................................11

     D.    There Is No Evidence To Support Plaintiff's Retaliation Claims............14

     E.    There Is No Basis for Individual or Aiding and Abetting Liability Against
          Ms. Wry ....................................................................................................16

IV.   CONCLUSION.....................................................................................................18

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

Anderson v. Liberty Lobby, Inc.,
    477 U.S. 242 (1986)...................................................................................................4

Burlington N. & Santa Fe Ry. Co. v. White,
    548 U.S. 53 (2006)...................................................................................................12

Burns v. USI Insurance Servs., LLC,
    No. 20-cv-05304-JMY, 2022 WL 824101 (E.D. Pa. Mar. 18, 2022) (Younge,
    J.)................................................................................................................................9

Castleberry v. STI Grp.,
    863 F.3d 259 (3d Cir. 2017)....................................................................................11

Celotex Corp. v. Catrett,
    477 U.S. 317 (1986)...................................................................................................4

Ciecka v. Cooper Health Sys.,
    No. CV 15-4075, 2017 WL 656727 (D.N.J. Feb. 14, 2017)....................................14

Collins v. Kimberly-Clark Penn, LLC,
    247 F. Supp 3d 571 (E.D. Pa. 2017) ...........................................................6, 14, 15

Connors v. Chrysler Fin. Corp.,
    160 F.3d 971 (3d Cir. 1998)...........................................................................5, 7, 10

Deans v. Kennedy House, Inc.,
    998 F. Supp. 2d 393 (E.D. Pa. 2014), aff'd, 587 F. App'x 731 (3d Cir. 2014) .......17

Duffy v. Paper Magic Grp., Inc.,
    265 F. 3d 163 (3d Cir. 2001)...................................................................................10

Fisher v. Catholic Social Servs. Of Archdiocese of Phila.,
    No. 18-CV-04653, 2019 WL 3731688 (E.D. Pa. Aug. 8, 2019) ................................5

Francesca Heredia-Caines v. Lehigh Valley Hospital, Inc.,
    No. 5:19-cv-05815, 2022 WL 152896 (E.D. Pa. January 18, 2002) (Gallagher,
    J.)................................................................................................................................2

Gunn v. On the Border Acquisitions, LLC,
    298 F. Supp. 3d 811 (E.D. Pa. 2018) .......................................................................7

Holland v. NTP Marble, Inc.,
    No. 17-CV-2909, 2019 WL 2059966 (E.D. Pa. May 8, 2019)...............................17

#156382398_v7

Jerome v. Phila. Housing Auth.,
    No. 19-272, 2020 WL 134358 (E.D. Pa. Jan. 13, 2020)........................................................5

Jones v. McCormick & Schmick's Seafood Rests., Inc.,
    No. 1:12-cv-04503, 2014 WL 1669808 (D.N.J. Apr. 28, 2014)..........................................7

Kirschling v. Atl. City Bd. Of Educ.,
    10 F. Supp. 3d 587, aff'd, 604 F. App'x 153 (3d Cir. 2015) ..................................................10

Larochelle v. Wilmac Corp.,
    769 F. App'x 57 (3d Cir. 2019) ...........................................................................................7

Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.,
    475 U.S. 574 (1986)..............................................................................................................4

McClement v. Port Auth. Trans-Hudson Corp.,
    No. 11-CV-06839 (CCC), 2022 WL 111047 (D.N.J. Jan. 12, 2022) ....................................15

McDonnell Douglas Corp. v. Green,
    411 U.S. 792 (1973)........................................................................................................5, 14

McNeil v. Greyhound Lines, Inc.,
    69 F. Supp. 3d 513 (E.D. Pa. 2014) ..................................................................................4, 6

Moss v. Nat'l R.R. Passengers Corp.,
    No. 18-1262, 2019 WL 4697603 (E.D. Pa. Sept. 26, 2019)................................................17

Mroczek v. Bethlehem Steel Corp.,
    126 F. Supp. 2d 379 (E.D. Pa. 2001) .................................................................................16

Nagle v. RMA, The Risk Mgm't Ass'n,
    513 F. Supp. 2d 383 (E.D. Pa. 2007) ..................................................................................7

Philips-Clark v. Phila. Hous. Auth.,
    No. 04-2474, 2007 WL 603039 (E.D. Pa. Feb 22, 2007) ...................................................12

Rippy v. Pub. Health Mgmt Corp.,
    No. 19-cv-1839-JMY, 2020 WL 832088 (E.D. Pa. Feb. 19, 2020)...............................16, 17

Roberson v. Barretts Bus. Servs., Inc.,
    No. 18-061, 2019 WL 4193977 (D. Del. Sept. 4, 2019).....................................................12

Rubert v. King,
    No. 19-CV-2781, 2020 WL 5751513 (S.D.N.Y Sept. 25, 2020)...........................................5

Samuel v. Target Realty, LLC,
    No. CV 19-2203, 2021 WL 4774858 (E.D. Pa. Oct. 13, 2021)....................................... *passim*

#156382398_v7

Sherrod v. Phila. Gas Works,
    209 F. Supp. 2d 443 (E.D. Pa. 2002) .......................................................................7

Texas Department of Community Affairs v. Burdine,
    450 U.S. 248 (1981) ...............................................................................................6

Thourot v. Monroe Career & Tech. Inst.,
    No. 3:14-CV-01779, 2018 WL 1453210 (M.D. Pa. Mar. 23, 2018) (applying
    Burlington to hostile work environment analysis) ................................................12

Tourtellotte v. Eli Lilly & Co.,
    636 F. App'x 831 (3d Cir. 2016) ..............................................................................6

Vazquez v. Carr and Duff, Inc.,
    No. 16-1727, 2017 WL 4310253 (E.D. Pa Sept. 28, 2017) ..................................16

Warfield v. SEPTA,
    No. CIV.A. 10-3023, 2011 WL 1899343 (E.D. Pa. May 19, 2011), aff'd, 460
    F. App'x 127 (3d Cir. 2012) ..................................................................................14

**Statutes**

42 P.S. § 955(a) .............................................................................................................16

42 U.S.C. § 1981 ..............................................................................................5, 16, 17

Phila. Code § 9-1103(b) .................................................................................................16

#156382398_v7

Defendants Dechert, LLP ("Dechert") and Elaine Wry ("Ms. Wry") (collectively "Defendants") respectfully submit this Memorandum of Law in support of their Motion for Summary Judgment.

## I.    <u>INTRODUCTION</u>

This is a case of claimed discriminatory / retaliatory discharge and harassment on account of race brought by a long-term highly paid billing employee of Dechert, who following promotion to a management position with its associated stress, and despite coaching, counseling and encouragement from her supervisor and Human Resources, decided to submit an unsolicited voluntary resignation letter.  Tellingly, in her resignation letter, she wrote:

> Effective December 31, 2020, I resign my position as Billing Manager at Dechert LLP.  **I appreciate the opportunity to have been titled Manager of the billing department for the last two years and to have served as a loyal and dedicated employee for the past 20 years.**  I am willing to assist in any way for a smooth transition of my responsibilities.

(SMF ¶68) (emphasis added). Plaintiff claims that she was constructively discharged by her supervisor, Elaine Wry (an Asian-American woman whom she also names in this lawsuit).  Ms. McClelland never heard nor was subjected to any inappropriate racial commentary while employed by Dechert.  Rather, Ms. McClelland relies exclusively on her own subjective belief and perception that Ms. Wry harbored a racial bias against her, without any other evidence in the record to support her claim.  To the contrary, the record evidence demonstrates that Ms. Wry was responsible for promoting Plaintiff to her Billing Manager position, gave her two positive written performance reviews during her time in the role, provided her with additional staffing to support her role as Billing Manager, secured pay increases for Ms. McClelland, and never once disciplined Ms. McClelland for any reason.  Plaintiff's subjective experience, regardless of how severe she perceived it to be "cannot make up for her lack of admissible evidence of objectively intolerable

work conditions." <u>Francesca Heredia-Caines v. Lehigh Valley Hospital, Inc.</u>, No. 5:19-cv-05815, 2022 WL 152896, at *9 (E.D. Pa. January 18, 2002) (Gallagher, J.) (<u>citing</u> <u>Clowes v. Allegheny Valley Hosp.</u>, 991 F.2d 1159, 1162 (3d Cir. 1993), as amended (May 27, 1993)).  Plaintiff's entire case rises and falls on her constructive discharge claim, as constructive discharge is the sole adverse employment action she alleges in support of her claims of discrimination, hostile work environment, and retaliation.  Because the record evidence falls woefully short of the intolerable discriminatory conditions required to prove constructive discharge, Ms. McClelland's claims for discrimination, hostile work environment, and retaliation must fail.  For the reasons set forth below, Defendants respectfully request that the Court grant Defendants' Motion for Summary Judgment on all counts.

## II.    **STATEMENT OF FACTS**

Ms. McClelland began working at Dechert in July 2000.  (SMF ¶1).  Throughout her two decades with the Firm, Ms. McClelland was highly valued and promoted numerous times—she began as a Billing Assistant in 2000 and moved up the ranks to eventually be promoted to Billing Manager in February 2019.  (SMF ¶9).  Ms. Wry chose Ms. McClelland for the new Billing Manager position because of Ms. McClelland's length of service and highly esteemed skills in Elite Billing.  (SMF ¶4-9).  When Ms. Wry promoted Ms. McClelland, Ms. Wry was fully aware that Ms. McClelland was a Black woman.  (SMF ¶8).  Ms. Wry was also able to secure Ms. McClelland a higher salary level than was initially offered.  (SMF ¶9-11).

Within Ms. McClelland's first two months in her new role, half of her billing team resigned. (SMF ¶17).  Due to the high turnover and new duties, Ms. McClelland felt a lot of stress as Billing Manager.  (SMF ¶28-29).  In order to address the turnover, the CFO and Ms. Wry asked Human Resources to gather the last five years of billing exit interview data to gain insight on how to improve retention.  (SMF ¶19).  In order to address Ms. McClelland's stress and heavy workload,

2

Ms. Wry received permission to hire a new Billing Supervisor.  (SMF ¶30-32).  Any time Ms. McClelland had issues in her position, Ms. Wry sought to resolve those issues. (SMF ¶30-32).  For example, when the CFO had mistakenly referred to the e-billing supervisor as a billing manager during a client meeting in which both Ms. McClelland the e-billing supervisor were present, which upset Ms. McClelland, Ms. Wry set up a meeting between the CFO and Ms. McClelland so it could be addressed.  (SMF ¶26).

While Ms. McClelland did not take to Ms. Wry's style of supervision (Ms. McClelland believes that Ms. Wry is a micro-manager), Ms. Wry's support of Ms. McClelland is demonstrated in both performance evaluations that Ms. Wry provided to Ms. McClelland.  In Ms. McClelland's 2019 Annual Review, Ms. Wry praised Ms. McClelland's hard work and dedication while also providing recognition of the immense stress Ms. McClelland had been under.  (SMF ¶41).  After Ms. McClelland received her 2019 review, her salary increased to $99,000.  (SMF ¶43).  In Ms. Wry's 2020 Mid-Year Check-In, she again praised Ms. McClelland's dedication and skills, provided constructive feedback, and ultimately ended the review by stating how she looked forward to seeing Ms. McClelland continue to grow in the position.  (SMF ¶41).

To Ms. Wry and the Firm's dismay, Ms. McClelland tendered her resignation on December 17, 2020. (SMF ¶67).  Ms. McClelland's resignation was received just weeks before the entire Financial Department was about to launch a new accounting and billing system, Aderant – an integration that Ms. McClelland had been integrally involved over her two years as Billing Manager.  (SMF ¶67).  In her resignation, Ms. McClelland did not raise or allude to any racial discrimination or harassment on the part of Ms. Wry or the Firm. (SMF ¶69).  The first time Ms. Wry became aware of any allegation of racial discrimination or harassment was when Ms.

McClelland filed her EEOC charge against the Defendants, and she denies all the allegations fervently.  (SMF ¶74).

## III.   LEGAL ARGUMENT

### A.   The Summary Judgment Standard

Summary judgment is proper  "'if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" <u>McNeil v. Greyhound Lines, Inc.</u>, 69 F. Supp. 3d 513, 521 (E.D. Pa. 2014) (quoting Fed. R. Civ. P. 56).  Summary judgment is also appropriate where the non-moving party has failed to "'make a showing sufficient to establish the existence of every element essential to that party's case, and on which that party will bear the burden of proof at trial.'" <u>Id.</u> (quoting <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986)) (internal parentheses omitted).  The party moving for summary judgment bears the initial burden of demonstrating that there are no genuine issues of material fact.  Fed. R. Civ. P. 56(c); <u>Celotex</u>, 477 U.S. at 325.

To defeat summary judgment, the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts," but instead must "come forward with 'specific facts showing that there is a *genuine issue for trial*.'" <u>Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.</u>, 475 U.S. 574, 585-87 (1986) (emphasis in original).  "The mere existence of a scintilla of evidence in support of the [non-movant]'s position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 252 (1986).  Unsupported assertions, improbable inferences, and speculation are not competent summary judgment evidence and will not suffice to defeat a motion for summary judgment.  <u>Id.</u> at 248-50; <u>see also</u> <u>McNeil</u>, 69 F. Supp. 3d at 521 ("'bare assertions, conclusory allegations or suspicions'" are insufficient to defeat summary judgment) (quoting <u>Fireman's Ins. Co. of Newark, N.J. v. DuFresne</u>, 676 F. 2d 965, 969 (3d Cir. 1982)).  "A material

#156382398_v7

fact is one that 'might affect the outcome of the suit under the governing law.'" <u>Szyper v. Am.</u> <u>Med. Response Mid-Atl.</u>, Inc., No. 20-4642, 2021 WL 5711826, at *2 (E.D. Pa. Dec. 01, 2021) (Kenney, J.) (quoting <u>Anderson</u>, 477 U.S. at 248).

Ms. McClelland asserts claims pursuant to 42 U.S.C. § 1981, Title VII, the PHRA, and the PFPO[1] under three different theories: discrimination, hostile work environment and retaliation. None of these claims are supported by evidence. Rather, the undisputed evidence demonstrates, <i>inter alia</i>, that Ms. McClelland was not constructively discharged; did not suffer any other adverse employment action; and was not otherwise subjected to a hostile work environment. Thus, there is no basis for liability against either Dechert or Ms. Wry. Because there is no genuine issue for trial with respect to any of the claims asserted by Ms. McClelland, and she has failed to establish her claims as a matter of law, Defendants are entitled to summary judgment in their favor on all counts.

**B.    Plaintiff Cannot Establish a *Prima Facie* Case of Racial Discrimination Because She Did Not Suffer Any Adverse Employment Action**

Unless there is direct evidence[2] of racial discrimination, the Court must evaluate the claims for racial discrimination under the three-step burden shifting inquiry set forth in <u>McDonnell</u>

---

[1] Claims under Title VII, the PHRA, and the PFPO are analyzed in an identical manner. <u>See, e.g.</u>, <u>Samuel v. Target Realty, LLC</u>, No. CV 19-2203, 2021 WL 4774858, at *6 (E.D. Pa. Oct. 13, 2021); <u>Jerome v. Phila. Housing Auth.</u>, No. 19-272, 2020 WL 134358, at *5 n.3 (E.D. Pa. Jan. 13, 2020). Similarly, racial discrimination claims under 42 U.S.C. § 1981 are analyzed under "the same burden-shifting scheme" as Title VII. <u>See, e.g.</u>, <u>Target Realty, LLC</u>, 2021 WL 4774858, at *6; <u>Fisher v. Catholic Social Servs. Of Archdiocese of Phila.</u>, No. 18-CV-04653, 2019 WL 3731688, at *3 (E.D. Pa. Aug. 8, 2019). Moreover, "as the Supreme Court has recently clarified, '[t]o prevail, a [§ 1981] plaintiff must initially plead and ultimately prove that, but for race, [she] would not have suffered loss of [her] legally protected rights.' In other words, a successful § 1981 plaintiff must plausibly allege that the defendant's discriminatory intent was a 'but-for' cause of an actionable adverse employment action or hostile environment." <u>Rubert v. King</u>, No. 19-CV-2781, 2020 WL 5751513, at *6 (S.D.N.Y Sept. 25, 2020) (quoting <u>Comcast Corp. v. Nat'l Ass'n of African Am. Owned Media</u>, 140 S. Ct. 1009, 1019 (2020)).

[2] This is not a direct evidence case. Direct evidence of discrimination is "overt or explicit evidence that directly reflects a discriminatory bias that is causally related to the adverse employment decision." <u>Target Realty, LLC</u>, 2021 WL 4774858, at *6 (citing <u>Glanzman v. Metro. Mgmt. Corp.</u>, 391 F.3d 506, 512 (3d Cir. 2004)). In demonstrating direct evidence, plaintiff faces a "high hurdle." <u>Connors</u>, 160 F.3d at 976. For example, "[s]tray remarks in the workplace, statements by nondescisionmakers, or even statements by decisionmakers unrelated to the decisional process itself do not constitute direct evidence of discrimination." <u>Target Realty, LLC</u>, 2021 WL 4774858, at *6 (quoting <u>Hodges v. UPMC Presbyterian Shadyside Hosp.</u>, No. 05-cv-1310, 2007 WL 654319, at *3 n.2 (W.D. Pa.

#156382398_v7

Douglas Corp. v. Green, 411 U.S. 792, 802-03 (1973).  See Collins v. Kimberly-Clark Penn, LLC, 247 F. Supp 3d 571, 588-89 (E.D. Pa. 2017); Samuel v. Target Realty, LLC, No. CV 19-2203, 2021 WL 4774858, at *7-8 (E.D. Pa. Oct. 13, 2021).  Accordingly, Plaintiff first bears the burden of establishing a *prima facie* case of discrimination.  McNeil, 69 F. Supp. 3d at 522 (citing Jones v. School Dist., 198 F. 3d 403, 410-11 (3d Cir. 1999)).

First, to demonstrate a prima facie claim of discrimination, plaintiff must produce evidence of the following: (1) she is a member of a protected class; (2) she was qualified for her position; (3) she suffered an adverse employment action; and (4) the action occurred under circumstances that could give rise to an inference of intentional discrimination.  Tourtellotte v. Eli Lilly & Co., 636 F. App'x 831, 842 (3d Cir. 2016) (citing Jones, 198 F.3d at 410-11).

Second, if Plaintiff succeeds in establishing a *prima facie* case, the burden shifts to Defendants to articulate a legitimate, nondiscriminatory reason for the actions complained of by Plaintiff.  McNeil, 69 F. Supp. 3d at 522 (citing Smith v. Borough of Wilkinsburg, 147 F. 3d 272, 278 (3d Cir. 1998)).

Third, Plaintiff then must prove by a preponderance of the evidence that the legitimate reasons offered by the Defendants were not the true reasons for Defendants' actions but were merely a pretext for discrimination.  Id., at 522.  The ultimate burden of proving intentional discrimination remains at all times with Plaintiff.  Texas Department of Community Affairs v. Burdine, 450 U.S. 248, 252-53 (1981).

Summary judgment should be granted to Defendants because Ms. McClelland was not constructively discharged and did not suffer any other adverse employment action, and thus cannot

---

Feb. 27, 2007)).  Numerous times throughout her deposition, Plaintiff admitted that there were no overt actions, derogatory remarks, or any words or actions that could be described as racist or racially motivated.  (SMF ¶72). Instead, Ms. McClelland admitted that her claims of racial discrimination are based on her subjective perceptions and emotions, rather than direct evidence.  (SMF ¶72).

#156382398_v7

establish a *prima facie* case of discrimination.[3]  Because Ms. McClelland cannot satisfy the first prong of the framework, the Court does not need to analyze steps two and three.  See Connors v. Chrysler Fin. Corp., 160 F.3d 971, 974, 976 (3d Cir. 1998)

### 1.    Plaintiff Was Not Constructively Discharged

Ms. McClelland is unable to satisfy the third prong of her *prima facie* case because she is unable to establish that she was constructively discharged.  It was Ms. McClelland's voluntary choice to leave Dechert, and it is well settled that "[v]oluntary resignation is not an adverse employment action." Larochelle v. Wilmac Corp., 769 F. App'x 57, 60-61 (3d Cir. 2019); see also Jones v. McCormick & Schmick's Seafood Rests., Inc., No. 1:12-cv-04503, 2014 WL 1669808, at *4 (D.N.J. Apr. 28, 2014) (granting summary judgment because there was no adverse employment action where employer did not rescind employee's tendered written resignation); Sherrod v. Phila. Gas Works, 209 F. Supp. 2d 443, 451-453 (E.D. Pa. 2002) (finding no adverse employment action where resignation was "clearly a voluntary act").  Unless the employee can demonstrate constructive discharge (which, as discussed *infra* Ms. McClelland cannot), an employee who voluntarily resigns cannot successfully maintain discrimination or retaliation claims against her employer.  See e.g., Gunn v. On the Border Acquisitions, LLC, 298 F. Supp. 3d 811, 823-25 (E.D. Pa. 2018) (granting summary judgment for employer where employee voluntarily resigned and no reasonable jury could find otherwise); Nagle v. RMA, The Risk Mgm't Ass'n, 513 F. Supp. 2d 383, 392-93 (E.D. Pa. 2007) (same).

To establish constructive discharge, plaintiff must prove "the employer knowingly permitted conditions of discrimination in employment so intolerable that a reasonable person subject to them would resign." Target Realty, LLC, 2021 WL 4774858, at *12 (quoting Mandel v.

---

[3] Here, there is no dispute that Ms. McClelland is a member of a protected class who was qualified for her position.

M&Q Packaging Corp., 706 F.3d 157, 169 (3d Cir. 2013)).  It is an objective standard, and the plaintiff's subjective belief of unfairness or discrimination do not apply.  Id.  Furthermore, constructive discharge is a higher standard than hostile work environment, and "plaintiff must demonstrate a greater severity or pervasiveness of harassment[.]" Id. (quoting Spencer v. Wal-Mart Stores, Inc., 469 F.3d 311, 316 n.4 (3d Cir. 2006)).

Ms. McClelland comes nowhere close to meeting this high bar.  Ms. McClelland presents no evidence supporting the circumstantial factors analyzed by the Third Circuit in evaluating a constructive discharge claim.  These factors include: "whether the employee was threatened with discharge, encouraged to resign, demoted, subject to reduced pay or benefits, involuntarily transferred to a less desirable position, subject to altered job responsibilities, or given unsatisfactory job evaluations." Target Realty, LLC, 2021 WL 4774858, at *12 (quoting Mandel, 706 F.3d at 169 (3d Cir. 2013) ("Ultimately, the conduct complained about must have 'surpassed a threshold of intolerable conditions.'") (quoting Wiest v. Tyco Elecs. Corp., 812 F.3d 319, 331 (3d Cir. 2016))).  None of these factors are present here. In fact, Dechert's work environment was quite the opposite for Ms. McClelland.  Ms. McClelland was promoted; she was provided with increased pay; and was provided with positive performance evaluations.

In the absence of any actual evidence of intolerable discriminatory treatment by Dechert, Ms. McClelland attempts to recast positive actions taken by Dechert in a negative light.  For example, Ms. McClelland characterizes her 2019 Performance Evaluation as "demean[ing]" (Pltf. Amended Complaint ¶ 20) as an example of racial discrimination.  However, in reading the evaluation, it is clear that review was overwhelmingly positive, and Ms. Wry even commended Ms. McClelland's skills and dedication to the job: "I commend Celiena for her efforts to keep the remaining team members working hard and personally putting in long hours and weekends to meet

partner billing deadlines.  Despite being short-staffed, Celiena still strived to produce quality work.

. . . . She has extensive institutional knowledge." (SMF ¶41; Ex. H).  Furthermore, in her 2020

Mid-Year Performance Evaluation, which Ms. McClelland received just a few months before her

voluntary resignation, Ms. Wry opened by again offering Ms. McClelland high praise and

recognizing the immense stress she had been under: "Celiena is a very hard worker and continues

to personally put in long hours including evenings and weekends to meet partner billing deadlines.

The team is often short-staffed and Celiena will take on the additional work to make sure deadlines

are met.  This is greatly appreciated by the Firm." (SMF ¶62; Ex. P).  Neither of these evaluations

demonstrate any encouragement to resign, a desire for Ms. McClelland to change positions, nor

share any of the other hallmarks of a constructive discharge claim; rather, they demonstrate that

Defendants valued Ms. McClelland's work and were keen on retaining her, which is why Ms. Wry

was disappointed when Ms. McClelland tendered her resignation.   (SMF ¶41&62).   Ms.

McClelland even admits that Ms. Wry found the performance evaluations to be positive, but Ms.

McClelland did not.  Ms. McClelland's perception of the performance reviews is not controlling

here.  Certainly a reasonable person would not find satisfactory performance reviews, that also

contain some constructive feedback, as negative.

Based on the testimony and evidence, no reasonable factfinder could find that Ms.

McClelland was subjected to working conditions so intolerable that she was constructively

discharged.  While Ms. McClelland's Complaint details the immense stress she was under as a

Billing Manager, being promoted to a position that involves more responsibilities which then leads

to increased stress, does not constitute an adverse change to her employee status, especially given

the fact that Ms. McClelland admits that this promotion is something she had wanted for years and

happily accepted.  (SMF ¶9); see, e.g., Burns v. USI Insurance Servs., LLC, No. 20-cv-05304-

JMY, 2022 WL 824101, at *2, 5-6 (E.D. Pa. Mar. 18, 2022) (Younge, J.)  (finding no constructive discharge under the ADA where even though Plaintiff complained of such immense stress she contemplated suicide, her resignation was voluntary); Duffy v. Paper Magic Grp., Inc., 265 F. 3d 163, 169 (3d Cir. 2001) (holding where the plaintiff was short staffed and required to work longer hours, which placed her under a lot of stress did not amount to constructive discharge because it "made her job *more stressful, but not unbearable*") (emphasis added).  Further undercutting her constructive discharge claim, when Ms. McClelland relayed her feelings of stress and anxiety, Ms. Wry worked to ease that stress—she hired a Billing Supervisor, reorganized the Department to ease Ms. McClelland's workload, sent her thank you notes, hired a coach, and secured Ms. McClelland a two raises in her first year.  Not once did Ms. McClelland face disciplinary action, a demotion, or a decrease in pay under Ms. Wry's supervision.  These were conclusively favorable employment actions: promotion, increased pay and the attention she received from Defendants, and certainly never adverse.

There is also no evidence that Plaintiff "attempted to explore alternatives before electing to resign," which is a "prerequisite to a successful constructive discharge claim." Connors v. Chrysler Fin. Corp., 160 F.3d 971, 975 (3d Cir. 1998) (citing Clowes v. Allegheny Valley Hosp., 991 F.2d 1159, 1161 (3d Cir. 1993)).  While Ms. McClelland maintains that she resigned because of racial discrimination and harassment, Ms. McClelland's resignation letter[4] did not mention racial discrimination or racial harassment.  See Kirschling v. Atl. City Bd. Of Educ., 10 F. Supp. 3d 587, 602, aff'd, 604 F. App'x 153 (3d Cir. 2015) (finding that the resignation letter made no mention of discrimination or intolerable working conditions weighed against finding of

---

[4] Ms. McClelland's resignation letter stated "[e]ffective December 31, 2020 I resign my position as Billing Manager at Dechert LLP.  I appreciate the opportunity to have been titled Manager of the billing department for the last two years and to have served as a loyal and dedicated employee for the past 20 years.  I am willing to assist in any way for a smooth transition of my responsibilities. (SMF ¶68; Ex. Q).

constructive discharge).[5]  Based on Ms. McClelland's failure to explore alternatives to remedy the alleged intolerable discriminatory conditions prior to resigning, coupled with the lack of evidence to support severe or pervasive discriminatory conditions, the Court must grant Defendants summary judgment as to Plaintiff's discrimination and related constructive discharge claims.

### C.    There Is No Evidence To Support Plaintiff's Claim for Hostile Work Environment

While a lesser standard than constructive discharge, Plaintiff's barren evidentiary record cannot satisfy her burden to demonstrate an actionable hostile work environment.  To establish a claim of hostile work environment, the plaintiff must show are: "1) the employee suffered intentional discrimination because of his/her race, 2) the discrimination was severe or pervasive, 3) the discrimination detrimentally affected the plaintiff, 4) the discrimination would detrimentally affect a reasonable person in like circumstances, and 5) the existence of respondeat superior liability meaning the employer is responsible." Castleberry v. STI Grp., 863 F.3d 259, 263 (3d Cir. 2017) (quoting Mandel, 706 F.3d at 167).

The "severe or pervasive" element requires that plaintiff demonstrate her "work environment became so abusive because of the discriminatory actions by her supervisors and co-

---

[5] Ms. McClelland claims that she complained of race bias and harassment; however, Ms. McClelland curiously never connected her complaint of bias and harassment to race in writing. (SMF ¶72).  Rather, she claims that others "knew" that was what she was complaining of, or that she verbally relayed that her concerns of bias and harassment were based on race. (SMF ¶73).  Again, however, nowhere in her Complaint or in the record does Ms. McClelland to point to any evidence, *other than her own perception*, of racial bias or harassment. The record of devoid of absolutely any evidence connecting the petty annoyance of Ms. Wry's "micro-management" of Ms. McClelland to bias or harassment based on race. Moreover, the record is clear that the last time Ms. McClelland claims she complained of race bias or harassment is July or August 2020, which is not sufficiently close to her voluntary resignation to support her constructive discharge claim. (SMF ¶73). Ms. McClelland admits that in between August 2020 and her resignation, there had been no adverse actions taken against her, but she chose to resign anyway following a particularly tense email exchange about a billing issue over email with a firm partner. (SMF ¶73).  No racial language was used and Ms. McClelland admits that the partner was not acting with any racial animus; moreover, the notes from Ms. McClelland's exit interview, explicitly state that her interactions with the partner were "not her reason for leaving." (Ex. R).  Thus, even if this court considers Ms. McClelland's alleged verbal complaints of bias and harassment based on race from July or August 2020, there is still insufficient nexus to the timing of her resignation decision for those complaints to support her constructive discharge claim.  Target Realty, LLC, 2021 WL 4774858, at *15-17 (one month gap between severe incident of racial bias or harassment and decision to leave employment undercut a claim of constructive discharge).

workers that it changed the very nature of her employment" and interfered with her work performance.  Target Realty, LLC, 2021 WL 4774858, at *17 (quoting Komis v. Perez, No. 11-cv-6393, 2014 WL 3437658, at *2 (E.D. Pa. July 15, 2014)).  "Simple teasing, offhand comments, and isolated incidents (*unless extremely serious*) will not amount to discriminatory changes in the terms and conditions of employment." Id. (emphasis added) (citing Clark Cty. Sch. Dist. v. Breeden, 532 U.S. 268, 271 (2001)).  Rather, a plaintiff must prove that she "was subjected to continuous and repeated acts of harassment" based on race and of a sufficiently severe nature as to alter the terms and conditions of her employment.  Roberson v. Barretts Bus. Servs., Inc., No. 18-061, 2019 WL 4193977, at *6 (D. Del. Sept. 4, 2019) (citing Drinkwater v. Union Carbide Corp., 904 F. 2d 853, 863 (3d Cir. 1990)).

First and foremost, anti-discrimination laws are not "'a general civility code for the American workplace[.]'" Philips-Clark v. Phila. Hous. Auth., No. 04-2474, 2007 WL 603039, at *9 (E.D. Pa. Feb 22, 2007) (quoting Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006).  "[P]etty slights or minor annoyances that often take place at work" are trivial harms, and not materially adverse actions for purposes of establishing a hostile work environment claim.  See Burlington, 548 U.S. at 68-69.  For example, Ms. McClelland's experience in the April 2019 client meeting, where the CFO mistakenly referred to a co-worker as a "manager" rather than a "supervisor," is not considered actionable by the Court, particularly given that no comments were addressed to her or about her, and there was never any mention of or even veiled reference to race. Id. at 68 ("snubbing by supervisors and co-workers are not actionable under § 704(a))") (internal quotations omitted); see also Thourot v. Monroe Career & Tech. Inst., No. 3:14-CV-01779, 2018 WL 1453210, at *8 n.4 (M.D. Pa. Mar. 23, 2018) (applying Burlington to hostile work environment analysis).

Ms. McClelland offers no evidence except her subjective belief that any of her perceived negative experiences at Dechert were related to her race. (SMF ¶¶66, 72). There was no race-based teasing, commentary, or actions, and Ms. McClelland admits as much multiple times throughout her deposition.

> Q. Okay. Do you agree that it was taking too long to fill [a DC billing position]?
> A. I didn't think so, but Elaine did.
> Q. Okay. Did you have any reason to believe that she was saying that in any way because of your race?
> A. No. I did not.
> (SMF ¶72; Ex. C) 289:19-291:1]

> Q. Okay. Thank you.  In your 2020 review, Ms. Wry provided some feedback on your communication style; is that correct?
> A. That is correct.
> Q. Did you believe that she said this and – because of your race?
> A. I believe – no, I do not.
> (SMF ¶61; Ex. C) [296:7-9]

> Q. Do you have any – any reason other than your perception of how [Ms. Wry] treated you to believe that she didn't want you working with her because you're black?
> A. No.
> (SMF ¶72;  Ex. C) [305:1-5]

> Q. Did you put [claims of harassment and discrimination] in writing?
> A. I think I said something – I think I sent her an email in writing about her harassing me.  I think I did that.
> Q. Did you say it was related to race?
> A. I didn't say that in my email[.] [but I know it that it was related to race.]
> (SMF ¶72; Ex. C) [309:10-16]

> Q. Okay. So can you say with any confidence right now, that you have reason to believe that [a partner] is racist or acting in a way based upon racial animus?
> A. I do believe that if I –
> Q. Not believe.  Can you say that you are certain, based on evidence, that [a partner] acted with racial animus toward you or anyone else?
> A. No. I cannot.
> (SMF ¶66; Ex. C) [331:13-22]

13

Rather than concrete examples, Ms. McClelland points to Ms. Wry's general managerial style as harassing and hostile.  However, Ms. McClelland offers no examples into evidence of how Ms. Wry's management style meets the hostile work environment standard, and instead relies on bare accusations of "hostile work environment" and "harassment".  Even if the Court found Ms. Wry to be a micromanager, it does not mean that Ms. McClelland was micromanaged because of her race; it does not rise to an adverse employment action; and it does not meet the "severe or pervasive" standard.  "It is well-settled that being closely supervised or watched does not constitute an adverse employment action that can support a hostile work environment claim, and that having one's work micromanaged may be unpleasant but does not give rise to a hostile work environment claim."  Ciecka v. Cooper Health Sys., No. CV 15-4075 (JBS/KMW), 2017 WL 656727, at *10 (D.N.J. Feb. 14, 2017) (quoting McKinnon v. Gonzales, 642 F. Supp. 2d 410, 423 (D.N.J. 2009)); Warfield v. SEPTA, No. CIV.A. 10-3023, 2011 WL 1899343, *6 n.7 (E.D. Pa. May 19, 2011), aff'd, 460 F. App'x 127 (3d Cir. 2012) (finding that "excessive monitoring and micromanagement" does not constitute evidence of a hostile work environment).

Because Ms. McClelland offers no other evidence to support her claim of hostile work environment, she cannot meet her burden.  Defendants respectfully request that the Court grant Defendants' Motion for Summary Judgement on these grounds.

### D. There Is No Evidence To Support Plaintiff's Retaliation Claims

Title VII prohibits an employer from retaliating against an employee that opposes an unlawful employment practice or participates in certain Title VII proceedings.  See Collins, 247 F. Supp. 3d at 596-97 (citing 42 U.S.C. § 2000e-3(a)).  Claims for retaliation are also analyzed under the McDonnell Douglas framework.  To meet her *prima facie* burden, Ms. McClelland must demonstrate that she: (1) engaged in a protected activity, (2) her employer took an adverse

14

employment action against her, and (3) there was a causal connection between her protected activity and the adverse employment action.  Collins, 247 F. Supp. 3d at 596-97.

Ms. McClelland grounds her retaliation claims in her "termination".  See Compl., ¶¶ 40, 72.  However, as demonstrated above, Ms. McClelland's termination cannot be the basis for her claim because it was not an adverse employment action; she voluntarily resigned and she was not constructively discharged.  Moreover, Ms. McClelland was not subject to any other adverse employment action following her internal complaint against Ms. Wry.  To the contrary, after Ms. McClelland's internal complaint, Defendants hired a leadership coach for Ms. McClelland, typically reserved only for attorneys and senior management.  (SMF ¶58).  In addition, Ms. Wry provided Ms. McClelland with a positive evaluation and constructive feedback on how Ms. McClelland and Ms. Wry can improve their communication with each other.  (SMF ¶61-63).  Ms. Wry concluded her 2020 Mid-Year evaluation, which was issued to Ms. McClelland after her July 2020 internal complaint about Ms. Wry to HR, by stating: "I would like Celiena to continue working on the above noted areas for improvement *as part of her continuous growth as Billing Manager.*"  (SMF ¶63; Ex. P) – demonstrating Defendants' desire that Ms. McClelland stay in her position.

Even where Ms. McClelland argues that Ms. Wry's managerial style was harassing and retaliatory, micromanaging or over-involved supervision does not evidence an adverse employment action.  McClement v. Port Auth. Trans-Hudson Corp., No. 11-CV-06839 (CCC), 2022 WL 111047, at *9 (D.N.J. Jan. 12, 2022) (holding that plaintiff's complaints of micromanagement did not rise to retaliation, even where plaintiff had to document her work actions for her supervisor).  The Finance Department was undergoing many changes, from integrating into the new billing system Aderant, to addressing high turnover, and restructuring the

Billing Department; it was Ms. Wry's responsibility to oversee all aspects and changes within the Finance Department.  (SMF ¶5).  Although Ms. McClelland alleges she was managed differently based on her race, she offers no evidence to support that allegation other than her subjective belief. Mroczek v. Bethlehem Steel Corp., 126 F. Supp. 2d 379, 390 (E.D. Pa. 2001) ("a plaintiff's *belief* alone that she is victim of discrimination is not enough to meet her burden of proof.").

Because Ms. McClelland cannot meet her *prima facie* burden for her retaliation claims, the Court must grant summary judgment in Defendants' favor.

### E.   There Is No Basis for Individual or Aiding and Abetting Liability Against Ms. Wry

Plaintiff's Amended Complaint seeks to impose individual liability on Ms. Wry under § 1981, Title VII, the PHRA, and the PFPO.  First, the PHRA and PFPO's intentional discrimination provisions (alleged in Counts III, VI, VII, VIII, X of Plaintiff's Amended Complaint) only apply to the discriminatory acts of an "employer," not by individual employees.  See 42 P.S. § 955(a); Phila. Code § 9-1103(b); see also Vazquez v. Carr and Duff, Inc., No. 16-1727, 2017 WL 4310253, at *6 (E.D. Pa Sept. 28, 2017) (granting motion to dismiss on PHRA and PFPO discrimination claims against an individual defendant).  While the PHRA and PFPO do permit individual liability for retaliation or aiding and abetting, there is no evidence to support finding a basis for individual liability against Ms. Wry.

Under § 1981, an individual will only be found liable where they were "personally involved in" and "intentionally caused the employer to infringe the employee's rights" or where they "authorized, directed, or participated" in discriminatory conduct.  Rippy v. Pub. Health Mgmt Corp., No. 19-cv-1839-JMY, 2020 WL 832088, at *10 (E.D. Pa. Feb. 19, 2020) (quoting Al-Khazraji v. St. Francis Coll., 784 F.2d 505, 518 (3d Cir. 1986)).  However, "[s]imply stating that one endured race discrimination without presenting allegations suggestive of such conduct does

not meet [Third Circuit] pleading standards." <u>Id.</u> (quoting <u>Funayama v. Nichia Am. Corp.</u>, No. 08-5599, 2009 WL 1437656, at *5 (E.D. Pa. May 21, 2009)).  As demonstrated above, there are no facts to support any claim of racial discrimination on the part of Ms. Wry.  Ms. Wry was responsible for Ms. McClelland's promotion, pay raises, and individualized leadership training. Ms. McClelland offers no evidence beyond generalized, conclusory statements that Ms. Wry racially discriminated or retaliated against her in any way.  As such, there is no basis for individual liability against her under § 1981 or PHRA or PFPO's retaliation provisions.

Similarly, the aiding and abetting claim (Count V) against Defendants must also fail.  The Amended Complaint avers no facts and offers nothing more than a conclusory statement that "Defendants engaged in an unlawful discriminatory practice in violation of PHRA §955(e) by aiding, abetting, inciting, compelling, and coercing the discriminatory conduct."  Compl.  ¶ 43. For the reasons set forth above, this claim is baseless and must fail.

Furthermore, aiding and abetting claims cannot survive independent of the primary PHRA and PFPO claims, which, as discussed, *supra*, must be dismissed.  <u>See Moss v. Nat'l R.R. Passengers Corp.</u>, No. 18-1262, 2019 WL 4697603, at *26 (E.D. Pa. Sept. 26, 2019) ("[Plaintiff's] aiding and abetting claims under the PHRA and PFPO fail as a matter of law because '[i]f the employer is not liable for any discriminatory practice then an individual employee cannot be held liable for aiding and abetting a discriminatory practice.'"); <u>Holland v. NTP Marble, Inc.</u>, No. 17-CV-2909, 2019 WL 2059966, at *10 (E.D. Pa. May 8, 2019) (same); <u>Deans v. Kennedy House, Inc.</u>, 998 F. Supp. 2d 393, 414 n.20 (E.D. Pa. 2014), <u>aff'd</u>, 587 F. App'x 731 (3d Cir. 2014) (holding that because plaintiff would not sustain discrimination claims against employer, plaintiff could no succeed on aiding and abetting claim against individual supervisors).

17

Therefore, because Defendants are entitled to summary judgment on Ms. McClelland's primary PHRA and PFPO claims, Ms. McClelland's aiding and abetting claim fails as a matter of law.

## IV.   **CONCLUSION**

For all of the foregoing reasons, Defendants respectfully request that the Court grant their Motion for Summary Judgment in its entirety, and enter judgment in their favor and against Plaintiff with respect to all claims in this action.

Respectfully submitted,

*/s/ Carolyn P. Short*
Carolyn P. Short
Valerie Brown
**Holland & Knight LLP**
Cira Centre
2929 Arch Street, Suite 800
Philadelphia, PA 19104
Telephone: 215-252-9600
Fax: 215-867-6070
Carolyn.Short@hklaw.com
Valerie.Brown@hklaw.com

Dated: April 22, 2022                    *Attorneys for Defendants*

18

## **CERTIFICATE OF SERVICE**

I hereby certify that on April 22, 2022, I electronically filed the foregoing Motion for Summary Judgment, Proposed Order, Memorandum of Law in Support of Defendants' Motion for Summary Judgment and Exhibits thereto with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record via electronic mail.

_/s/ Carolyn P. Short_____
Carolyn P. Short

19