UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CELIENA MCCLELLAND<br><br>                Plaintiff,<br><br>   v.<br><br>DECHERT, LLP and<br>ELAINE WRY (Individually)<br><br>                Defendants. | CIVIL ACTION<br>No. 2:21-cv-2702 |

**REPLY BRIEF IN SUPPORT OF DEFENDANTS**
**DECHERT, LLP'S AND ELAINE WRY'S MOTION FOR SUMMARY JUDGMENT**

       Defendants Dechert, LLP ("Dechert") and Elaine Wry ("Ms. Wry") (collectively "Defendants") respectfully submit this Reply Brief in further support of their Motion for Summary Judgment ("MSJ") (Dkt. 24) and to address Plaintiff Celiena McClelland's ("Plaintiff" or "Ms. McClelland") Memorandum of Law in Opposition to Defendants' MSJ ("Opposition" or "Opp.") (Dkt. 29).

**I.    ARGUMENT**

       This is a constructive discharge case, and Plaintiff's Opposition further highlights that Plaintiff lacks *any* evidentiary support of objectively intolerable discriminatory work conditions at all, let alone conditions that are severe and pervasive enough to constitute a constructive discharge. Rather, Plaintiff's opposition reinforces that Plaintiff's resignation was voluntary, planned well in advance, was not motivated by any specific incident where race-based language, threats or conduct occurred, and contains no other hallmarks of a constructive discharge claim. See Defendants' Memorandum of Law in Support of MSJ, Dkt. 24, at pp. 7-11. Instead of pointing

to any evidence that amounts to a constructive discharge, Plaintiff focuses on eight reasons that she contends she was subjected to a hostile work environment. However, even if this evidence were sufficient to constitute a hostile work environment (which it is not, for the reasons set forth below), it is *still not enough* to establish a tangible employment action (here, constructive discharge) as is required under both state and federal law.

Plaintiff's weak attempts to miscast neutral or positive employment actions as discriminatory based solely on her unsupported subjective belief that the actions were adverse, is insufficient as a matter of law to maintain her claims against Defendants. For the reasons stated below, as well as in Defendants' Memorandum of Law in support of MSJ, Plaintiff's claims fail as a matter of law and Defendants' MSJ should be granted in its entirety.

      **A.    Plaintiff's Title VII Claim of Harassment and Hostile Work Environment Fails As a Matter of Law as Plaintiff Cannot Prove that She Suffered Intentional Discrimination Because of Her Race**

In support of Plaintiff's attempt to cast her own subjective perception that Ms. Wry harbored a racial bias against her as "intangible" harm flowing from harassment that is sufficiently severe or pervasive to create a hostile work environment, Plaintiff points to "nine [eight] examples of conduct over the course of her employment under Wry" set forth in pages 2-4 in Plaintiff's Opposition as paragraphs a-h. Plaintiff's Opposition, p. 14. As shown below, all of Plaintiff's examples, both individually and collectively, fall woefully short of establishing that she "was subjected to continuous and repeated acts of harassment" based on her race and of a sufficiently severe or pervasive nature as to alter the terms and conditions of her employment regardless of whether the alleged harm is cast as tangible or intangible. Roberson v. Barretts Bus. Servs., Inc., No. 18-061, 2019 WL 4193977, at *6 (D. Del. Sept. 4, 2019) (citing Drinkwater v. Union Carbide Corp., 904 F. 2d 853, 863 (3d Cir. 1990)).

First, Plaintiff states "[o]n many occasions Wry would contact billing members asking them questions about Plaintiff with neither reason nor provocation. Team members informed Plaintiff of Wry's activity." Plaintiff's Opposition, p. 2 ¶a. There are any number of reasons why Ms. Wry, as Plaintiff's supervisor, might contact Plaintiff's team members to inquire as to Plaintiff. Plaintiff's bald allegation does not even attempt to ascribe a racially discriminatory motive towards the action. Instead, Plaintiff puts forward her own subjective belief that Ms. Wry contacted her team members "with neither reason nor provocation" and fails to support this subjective claim with any objective evidence. This unsupported assertion and speculation is not competent evidence to defeat summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-50 (1986); see also McNeil v. Greyhound Lines, Inc., 69 F. Supp. 3d 513, 521 (E.D. Pa. 2014) ("bare assertions, conclusory allegations or suspicions" are insufficient to defeat summary judgment) (quoting Fireman's Ins. Co. of Newark, N.J. v. DuFresne, 676 F. 2d 965, 969 (3d Cir. 1982)). Further, even if taken as true, it does not establish harassing behavior based on race that is "'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment,'" as required to find a Title VII violation for Hostile Work Environment. National R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 116 (2002) (quoting Harris v. Forklift Systems, Inc., 510 U.S. 17, 21 (1993)).

Second, Plaintiff alleges that Ms. Wry summoned Plaintiff to Ms. Wry's office to inquire whether three billers under Plaintiff's supervision that left Dechert in February and March of 2019 had left because of Plaintiff. Plaintiff further alleges that Ms. Wry contacted Human Resources to verify Ms. McClelland's response that the billers left because other firms were paying more. Plaintiff's Opposition, p. 2 ¶b. Again, the allegation lacks any purported connection to discriminatory racial bias or motive and amounts to nothing more than an unsupported assertion

3

and speculation, at best. Even if taken as true, Plaintiff's allegation does not establish harassing behavior sufficiently severe or persuasive enough that it altered the very nature of her employment as required to establish a claim for hostile work environment.

Third, Plaintiff alleges "Wry fabricated statements such as Plaintiff using a bad tone with a biller but could not specify who made any such complaints or the substance of the same." Plaintiff's Opposition, p. 2 ¶c. Once again, Plaintiff has no evidentiary support for the allegation outside of Plaintiff's own subjective belief and speculation. To the contrary, Plaintiff is aware that Tracy Goodger in her exit interview commented on Plaintiff's tone, which made Ms. Goodger feel reprimanded. See MSJ Ex. M ("Her supervisor's tone when responded [sic] made her feel reprimanded."). Further, even taken as true, the allegation lacks any connection to racial discrimination.

Fourth, Plaintiff alleges "Wry asserted that Plaintiff had no patience when training new billers. . . . No other Caucasian employee was being sabotaged. . . . Plaintiff was intentionally being targeted due to her race." Plaintiff's Opposition, p. 3 ¶d. Here, Plaintiff's allegations as to racial motivation are nothing more than "bare assertions, conclusory allegations or suspicions" and as such, are insufficient to defeat summary judgment. McNeil, 69 F. Supp. 3d at 521. The remaining allegation that Wry asserted that Plaintiff had no patience when training new billers is—at worst—an example of micromanaging which does not give rise to a hostile work environment claim. Ciecka v. Cooper Health Sys., No. CV 15-4075 (JBS/KMW), 2017 WL 656727, at *10 (D.N.J. Feb. 14, 2017) (quoting McKinnon v. Gonzales, 642 F. Supp. 2d 410, 423 (D.N.J. 2009)); Warfield v. SEPTA, No. CIV.A. 10-3023, 2011 WL 1899343, *6 n.7 (E.D. Pa. May 19, 2011), aff'd, 460 F. App'x 127 (3d Cir. 2012) (finding that "excessive monitoring and micromanagement" does not constitute evidence of a hostile work environment).

Fifth, Plaintiff alleges that Ms. Wry refused to correct a statement during an April 2019 telephone conference with a client where the CFO mistakenly referred to another employee, rather than Plaintiff, as "our E-billing Manager." Plaintiff states that Plaintiff was the only person in attendance during the meeting that had not been announced and the only African-American in attendance. Plaintiff's Opposition, p. 3 ¶e. As established in Defendants' MSJ, "petty slights or minor annoyances that often take place at work" are trivial harms, and not materially adverse actions for purposes of establishing a hostile work environment claim. See Burlington N. & Santa Fe Ry. Co. v. White, , 548 U.S. 53, 68-69 (2006). Here, given that no comments were addressed to Plaintiff or about Plaintiff, and there was never any mention of or even a veiled reference to her race, Plaintiff cannot rely on this instance as evidence of a hostile work environment. Id. at 68 ("snubbing by supervisors and co-workers are not actionable under § 704(a)") (internal quotations omitted); see also Thourot v. Monroe Career & Tech. Inst., No. 3:14-CV-01779, 2018 WL 1453210, at *8 n.4 (M.D. Pa. Mar. 23, 2018) (applying Burlington to hostile work environment analysis).

Sixth, Plaintiff alleges that after she discussed the "E-Billing Manager" misstatement with the CFO, Plaintiff was informed that she no longer would be managing the E-Billing Department, and it would be reporting, instead, to Ms. Wry. Plaintiff further alleges "[h]aving that department taken from Plaintiff was very embarrassing, as she had been supervising the E-[B]illing [D]epartment since 2017 and it was clear that this scheme was hatched by Wry to further the racial discrimination and effect Plaintiffs status in the firm and reduce her income." Plaintiff's Opposition, pp. 3-4 ¶f. Again, Plaintiff's allegations as to racial motivation are nothing more than "bare assertions, conclusory allegations or suspicions," and as such, are insufficient to defeat summary judgment. McNeil, 69 F. Supp. 3d at 521. Further, Plaintiff's allegation is supported

5

only by her own subjective belief and is directly contradicted by the written evidence Plaintiff attached to her Opposition. Rather than a "scheme . . . hatched by Wry to further the racial discrimination" as Plaintiff claims, the move was in response to the E-Billing supervisor coming to Ms. Wry directly and expressing his frustration and unhappiness with Plaintiff. See Plaintiff's Opposition at Ex. C. Moreover, her allegation that this change was intended to reduce her salary is pure speculation and completely baseless. The only changes to Plaintiff's salary while Ms. Wry was her supervisor were increases, never a decrease.

Seventh, Plaintiff alleges "[i]f Plaintiff asked questions Wry would often cut her off and try to finish her sentence. Wry would state in meetings 'do you now understand Celiena' which was humiliating to Plaintiff because it created an impression of incompetency. This treatment was a result of Plaintiff being an African American woman." Plaintiff's Opposition, p. 4 ¶g. Yet again, Plaintiff's allegations as to racial motivation are nothing more than "bare assertions, conclusory allegations or suspicions" and as such, are insufficient to defeat summary judgment. McNeil, 69 F. Supp. 3d at 521. The remaining allegation that Wry would often cut her off, try to finish her sentence, and would state in meetings "do you now understand Celiena" is best described as "petty slights or minor annoyances that often take place at work" which are trivial harms and not materially adverse actions for purposes of establishing a hostile work environment claim. See Burlington, 548 U.S. at 68-69.

Eighth, Plaintiff alleges that while Plaintiff and her team were transitioning to a remote working environment in March 2020, Ms. Wry expected Plaintiff to assist the billers with their assignments until they received additional office equipment at their homes. Plaintiff alleges "Wry made excessive requests which caused Plaintiff to work late nights in order to meet Wry's demanding needs. No other similarly situated people were required to be overworked by the

Firm." Plaintiff's Opposition, p. 4 ¶h.  Again, there is absolutely no connection between Plaintiff's respective workload and race discrimination. Moreover, Ms. Wry repeatedly sought to assist Plaintiff in reducing her workload, and Plaintiff of course perceived such assistance as discrimination.  Ms. Wry also expressed gratitude directly to Plaintiff for the long hours and hard work she was performing, but Plaintiff has chosen to ignore that record evidence in favor of her personal perceptions.  There is no basis for this allegation outside of Plaintiff's own subjective belief which is insufficient to defeat summary judgment.  McNeil, 69 F. Supp. 3d at 52.

Taken individually and as a whole, Plaintiff's allegations, even if true, do not establish harassing behavior based on race that is "'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment,'" as required to find a Title VII violation for Hostile Work Environment.  Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 116 (2002) (quoting Harris v. Forklift Systems, Inc., 510 U.S. 17, 21 (1993)).  Moreover, "conclusory, self-serving affidavits are insufficient to withstand a motion for summary judgment." Duckett v. Dep't of Health & Hum. Servs., No. CV 18-4017, 2019 WL 3216612, at *5 (E.D. Pa. July 17, 2019) (finding plaintiff's self-serving and unsupported affidavit was insufficient to defeat summary judgment on a hostile work environment claim) (quoting Kirleis v. Dickie, McCamey & Chilcote, P.C., 560 F.3d 156, 161 (3d Cir. 2009)).  Therefore, Plaintiff's claim fails and the Court must grant Defendants summary judgment as to Plaintiff's harassment and hostile work environment claims.

## II.     CONCLUSION

For all of the foregoing reasons, as well as the reasons stated in Defendants' MSJ, Defendants respectfully request that the Court grant their Motion for Summary Judgment in its

entirety, and enter judgment in their favor and against Plaintiff with respect to all claims in this action.

Respectfully submitted,

*/s/ Carolyn P. Short*
Carolyn P. Short
Valerie Brown
**Holland & Knight LLP**
Cira Centre
2929 Arch Street, Suite 800
Philadelphia, PA 19104
Telephone: 215-252-9600
Fax: 215-867-6070
Carolyn.Short@hklaw.com
Valerie.Brown@hklaw.com

Dated: June 2, 2022                *Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on June 2, 2022, I electronically filed the foregoing Reply Brief in Support of Defendants' Motion for Summary Judgment with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record via electronic mail.

/s/ Carolyn P. Short
Carolyn P. Short